UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARMALITA McCLAIN,

        Plaintiff,

                                    Case No. 04-73467

v.                                 Hon. Gerald E. Rosen

DETROIT ENTERTAINMENT, L.L.C.,

        Defendant.

_____/

**OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 28, 2006    

PRESENT:  Honorable Gerald E. Rosen
United States District Judge

## I.  INTRODUCTION

    Plaintiff Carmalita McClain commenced this action in this Court on September 7,

2004, alleging that her former employer, Defendant Detroit Entertainment, L.L.C.,

violated the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.,*

and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.,* by

terminating her for allegedly failing to comply with a company attendance policy.  This

Court's subject matter jurisdiction rests upon Plaintiff's assertion of a federal claim under

the FMLA.  See 28 U.S.C. § 1331.

    By motion filed on April 29, 2005, Defendant now seeks summary judgment in its

favor on Plaintiff's state and federal claims.[1]  Regarding Plaintiff's claim of interference with her rights under the FMLA, Defendant argues (i) that it did not interfere with these rights but, to the contrary, granted the intermittent pregnancy-based leave sought by Plaintiff, and (ii) that Plaintiff was terminated for violating Defendant's attendance policy, and not for the proper exercise of her rights under the FMLA.  Similarly, Defendant contends that Plaintiff has failed to establish a retaliation claim under the FMLA, where (i) she was unable to identify a factual basis for this claim at her deposition, and (ii) Defendant acted on the basis of Plaintiff's attendance policy violations, and not out of any retaliatory motive.  Plaintiff filed a response in opposition to this motion on May 20, 2005, contending that Defendant's reliance on its own attendance policy cannot relieve the company of the obligations owed to employees under the FMLA.

Having reviewed Defendant's motion and accompanying exhibits, Plaintiff's response, and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendant's motion "on the briefs."  See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

---

[1]In her response to this motion, Plaintiff states that she has voluntarily withdrawn her state-law claim of pregnancy discrimination, leaving only her federal FMLA claims to be addressed by the Court.

For present purposes, the pertinent record is quite limited and fairly straightforward.  Plaintiff Carmalita McClain was hired by Defendant Detroit Entertainment L.L.C. (doing business as the MotorCity Casino) in November of 1999. Plaintiff initially was employed as a cage cashier, but was promoted to the position of floorperson in April of 2001.  She remained in this position until she was terminated on February 2, 2004.  For the last three months of her employment, Plaintiff worked the late swing shift from 9:00 p.m. to 5:00 a.m.

Plaintiff's employment was governed by a number of policies set forth in "The Associate's Guide to MotorCity Casino."  (See Defendant's Motion, Ex. 2, Associate's Guide.)  A section of this policy manual, discussed in greater detail below, addressed the rights and obligations of Defendant's employees under the FMLA.  (See id. at 37-40.) Another portion of this manual set forth Defendant's attendance and punctuality policy. As relevant here, this policy limited the number of times within a 90-day period that an employee could call in to report an absence or late arrival.  Specifically, three "call-ins" within a 90-day period would result in a verbal warning; four "call-ins" would result in a written warning; five "call-ins" would result in a two-day suspension; and six "call-ins" would result in termination.

On or around January 12, 2004, Plaintiff applied for intermittent FMLA leave, citing her pregnancy.  In accordance with Defendant's policy, Plaintiff obtained a certification from her treating physician, Dr. Cassie Laasch, on January 13, 2004, stating that Plaintiff was pregnant and that the expected duration of this condition was ten

3

months, during which time Plaintiff might experience nausea or vomiting that could result in her absence from work.  (See Defendant's Motion, Ex. 3, Certification at 2.)  Dr. Laasch noted that Plaintiff was scheduled for monthly office visits, with the frequency of these visits to increase as her pregnancy progressed.  (See id. at 2-3.)  The doctor further stated that Plaintiff was "[n]ot presently incapacitated" as a result of her pregnancy, but that she had recently suffered through a period of incapacity from January 9 through January 12, 2004, and that the "[f]requency & duration" of any further episodes was "unknown."  (Id. at 2-3.)  Finally, Dr. Laasch stated that Plaintiff could "continue to work as tolerated."  (Id. at 3.)

In a letter dated January 27, 2004, Defendant notified Plaintiff that her request for intermittent FMLA leave had been approved.  (See Defendant's Motion, Ex. 4, 1/27/2004 Approval Letter.)[2]  This letter noted that Plaintiff's request spanned from January 9 to June 8, 2004.  (See id.)  Finally, the letter stated:

> **Please make sure you specify FMLA if your call in is related to this leave.  If condition persists past the date of approval, a new certification form will have to be filled out by your doctor prior to expiration.**

(Id. (emphasis in original))

During the same period that Plaintiff requested and was granted intermittent FMLA leave, she missed a number of days of work.  In particular, Plaintiff testified that

---

[2]Plaintiff testified at her deposition that she also received a January 23, 2004 letter from Defendant approving her request for intermittent FMLA leave, (see Defendant's Motion, Ex. 1, Plaintiff's Dep. at 30), but this earlier letter is not in the record provided to the Court.

4

she was off from January 10 to January 27, 2004, and then returned to work on

Wednesday, January 28, 2004.  (<u>See</u> Defendant's Motion, Ex. 1, Plaintiff's Dep. at 26.)

The following two days, Thursday and Friday, were her regular off days, but Plaintiff

worked again on Saturday, January 31, 2004.  (<u>See</u> <u>id.</u>)  Plaintiff then called in another

absence on Sunday, February 1, 2004.  (<u>See</u> <u>id.</u>)  According to Plaintiff, when she called

in each of these absences, she stated that she was "taking an FMLA day."  (<u>Id.</u> at 83.)

Upon returning to work on Monday, February 2, 2004, Plaintiff was told that she

had been terminated.  In support of this determination, Plaintiff's supervisor, Starrice

James, presented her with two disciplinary notices that day.  In the first, Plaintiff was

notified that she had received a two-day suspension for calling in absences on two dates

in October of 2003, two dates in December of 2003, and January 10 through 14, 2004.

(<u>See</u> Defendant's Motion, Ex. 5, Notice of Suspension.)  This notice further stated that

Plaintiff had been given verbal and written warnings in the fall of 2003, and that Plaintiff

had been "approved for intermittent FMLA [leave] but ha[d] missed time where she

needed to apply for LOA [<i>i.e.,</i> leave of absence] (and be approved)."  (<u>Id.</u>)

The second disciplinary notice presented to Plaintiff on February 2, 2004 was

similar, but this one stated that her employment had been terminated.  (<u>See</u> Defendant's

Motion, Ex. 6, Notice of Termination.)  In addition to citing the same nine called-in

absences referenced in the notice of suspension, the notice of termination stated that

Plaintiff also had called in absences on the nine additional dates of January 17 through 20,

January 24 through 27, and February 1, 2004.  (<u>See</u> <u>id.</u>)  This notice again recounted the

5

prior discipline imposed upon Plaintiff, including the two-day suspension imposed the same day, and further stated that Plaintiff had "not been approved for LOA for time missed." (Id.)

According to Plaintiff, she first learned of her discharge earlier in the day on February 2, 2004, when she visited Dr. Laasch's office to obtain an additional certification requested by Defendant. Plaintiff testified that on or around January 27 or 28, 2004, she was told by a member of Defendant's human resources staff, Satanya Van Dam, that she needed to provide additional medical documentation in support of her recent called-in absences. (See Plaintiff's Dep. at 35-37, 59.) Plaintiff explained that her doctor was on vacation until the following Monday, February 2, 2004, and Van Dam reportedly responded that this would be soon enough to meet Defendant's needs. (See id. at 35, 38.) Nonetheless, when Plaintiff went to Dr. Laasch's office on February 2 to obtain the necessary paperwork, a nurse telephoned an employee in Defendant's human resources department, Letitia McCall, and was informed that Plaintiff had already been terminated. (See id. at 38-39.) This was confirmed, of course, when Plaintiff arrived at work later that day and was presented with the above-referenced disciplinary notices.

Plaintiff filed a grievance through her union protesting her discharge, but this effort was unsuccessful. She then filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2004, and received a right-to-sue letter in July of 2004. This lawsuit followed on September 7, 2004, with Plaintiff asserting a state-law claim of pregnancy discrimination (which she has now voluntarily

6

withdrawn) and FMLA claims of retaliation and interference with her rights under this federal statute.

### III.  ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Through its present motion, Defendant seeks an award of summary judgment in its favor on Plaintiff's FMLA claims of interference and retaliation.[3]  Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases — Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) — ushered in a "new era" in the federal courts' review of motions for summary judgment.  These cases, in the aggregate, lowered the movant's burden in seeking summary judgment.[4]  According to the Celotex Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[3]Defendant's motion also challenges Plaintiff's state-law claim of pregnancy discrimination, but, as noted, this claim has been voluntarily withdrawn.

[4]"[T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure, § 2727, at 468 (1998) (footnote omitted).

to that party's case, and on which that party will bear the burden of proof.

Celotex, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit adopted a series of principles

governing motions for summary judgment. These principles include:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent  must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).  See also

Nernberg v. Pearce, 35 F.3d 247, 249 (6th Cir. 1994).  The Court will apply these

standards in resolving Defendant's motion.

**B.    Issues of Fact Remain as to Whether Defendant Interfered with Plaintiff's Exercise of Her Rights Under the FMLA.**

Although, as discussed below, Plaintiff has asserted a claim of retaliation, the

8

principal focus of her allegations and deposition testimony is that Defendant interfered with her exercise of her rights under the FMLA — in particular, her right to intermittent medical leave — by applying an attendance policy that is inconsistent with, and more stringent than, the requirements reflected in the FMLA and its implementing regulations. In seeking summary judgment in its favor on this claim, Defendant argues that it granted the leave to which Plaintiff was entitled under the FMLA, and that the challenged action taken against Plaintiff — specifically, her termination — was based upon her violation of a wholly distinct attendance policy. Under the present record, however, the Court readily concludes that Defendant is not entitled to summary judgment in its favor on this issue.

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1). As noted, the right claimed by Plaintiff here is the entitlement to 12 weeks of leave per 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). By statute, this leave "may be taken intermittently . . . when medically necessary." 29 U.S.C. § 2612(b)(1).

The Sixth Circuit recently addressed intermittent FMLA leave in Cavin v. Honda of America Manufacturing, Inc., 346 F.3d 713 (6th Cir. 2003), a decision that is instructive here. The plaintiff in that case, Samuel J. Cavin, injured his shoulder in a motorcycle accident, and he contacted his employer, Defendant Honda, the same day to state that he would be unable to return to work until the following day. At a doctor's

9

appointment the next day, however, Cavin was advised to stay home for the remainder of

the work week.  Although Cavin called the company each day to report his continuing

absence from work, he did not explicitly state that he needed a medical leave, nor did he

comply with a Honda policy requiring employees to contact the company's "Leave

Coordination Department" within three days after the employee first misses work on

account of an unforeseeable need for a leave of absence.[5]  Because of this violation, a

portion of Cavin's subsequent request for FMLA leave was denied, and he was placed in

the first phase of a progressive scheme of discipline that ultimately led to his discharge a

few months later.

     The district court granted summary judgment in Honda's favor on Cavin's claim of

interference with his FMLA rights, but the Sixth Circuit reversed.  In so ruling, the Court

initially observed that Cavin's claim was not defeated by his failure to comply with

Honda's leave policy, at least to the extent that the company's policy was inconsistent

with the requirements imposed under the FMLA and its implementing regulations.  See

Cavin, 346 F.3d at 720-23.  Rather, the Court held that "employers cannot deny FMLA

relief for failure to comply with their internal notice requirements," so long as an

employee gives adequate notice in compliance with the provisions of the FMLA itself.

346 F.3d at 723.

     The Court next found that the record, viewed most favorably to Cavin,

---

[5]The Honda policy, like the pertinent FMLA regulations, see 29 C.F.R. §§ 825.302,
825.303, distinguished between foreseeable and unforeseeable needs for leave, with greater
advance notice generally required where the need for a leave was foreseeable.

10

demonstrated that he had given sufficient notice of his need for a medical leave, despite

his failure to contact Honda's Leave Coordination Department within three days in

accordance with company policy.  See Cavin, 346 F.3d at 723-26.  As observed by the

Court, the adequacy of notice is a mixed question of fact and law.  See 346 F.3d at 723.

The Court further explained:

> Although it is within the province of the jury to determine the facts of the
> notice given, it is for the court to determine whether those facts are
> sufficient reasonably to give an employer notice as required by the FMLA.
> Therefore, for summary judgment purposes, we should determine whether,
> viewing the facts in the light most favorable to Cavin, Cavin has complied
> with the FMLA's notice requirements as a matter of law.

346 F.3d at 723.  To comply with these requirements and secure the statute's protections,

"an employee must provide notice and a qualifying reason for requesting the leave," but

need not "expressly assert his right to take leave as a right under the FMLA."  346 F.3d at

723 (internal quotation marks and citations omitted).  Rather, "[t]he critical question is

whether the information imparted to the employer is sufficient to reasonably apprise it of

the employee's request to take time off for a serious health condition," and "[a]n

employee gives his employer sufficient notice that he is requesting leave for an FMLA-

qualifying condition when he gives the employer enough information for the employer to

reasonably conclude that an event described in the FMLA . . . has occurred."  346 F.3d at

723 (internal quotation marks and citation omitted).

Applying these standards, the Court found that "for summary judgment purposes

Cavin's notice to Honda was sufficient to apprise Honda of his request to take time off for

11

a serious health condition."  346 F.3d at 725 (internal quotation marks and citation

omitted).  While Cavin did not explicitly state in his initial call to Honda that he was

suffering from a "serious health condition" or that he would need to miss work for an

extended period, he nonetheless informed his employer that he had been in a motorcycle

accident, had been treated at the hospital, and was unable to work as a result of this

incident.  The Sixth Circuit found that this information, viewed in a light most favorable

to Cavin, served to inform Honda that Cavin was "unable to perform his job because of

his injury."  346 F.3d at 725.  Although Cavin never raised the subject of a leave when he

called to report his absences, the Court found that "an employee can give notice sufficient

to make his employer aware that he needs FMLA-qualifying leave without using the

words 'leave' or 'leave of absence.'" 346 F.3d at 725.  Finally, the Sixth Circuit deemed

it immaterial that Cavin reported his absences by calling a general telephone number,

rather than speaking directly to Honda's Leave Coordination Department, reasoning that

the company, if it wished, could put procedures in place to ensure that the information

received from an employee is relayed to this department.  346 F.3d at 725-26 & n.9.

Returning to the present case, if summary judgment was not warranted in Cavin, it

surely is inappropriate here.  In this case, in contrast to Cavin, Plaintiff expressly

requested ***and was granted*** intermittent FMLA leave by her employer.  This leave was

supported by the certification of Plaintiff's physician, Dr. Laasch, that she had the

"serious health condition" of pregnancy, that this condition had an expected duration of

ten months, and that Plaintiff would need to miss work intermittently during this period to

12

attend monthly prenatal care appointments and to recover from occasional bouts of nausea and vomiting.  (See Defendant's Motion, Ex. 3, Certification at 2-3.)  The FMLA's implementing regulations specifically cite pregnancy as an example of a "serious health condition" that warrants intermittent leave, noting that such a leave ordinarily would encompass "prenatal examinations" and the employee's "own condition, such as for periods of severe morning sickness."  29 C.F.R. § 825.203(c)(1).  Moreover, Dr. Laasch's certification seemingly met all of the requirements set forth in the pertinent FMLA provision, see 29 U.S.C. § 2613(b), and Defendant does not contend otherwise.

To the contrary, Defendant *approved* the intermittent leave requested by Plaintiff and supported by her physician's certification.  In its January 27, 2004 approval letter, Defendant stated that it had approved Plaintiff's request for intermittent FMLA leave, and it cited Plaintiff's notification "that you need this leave to begin on 1/9/04 and expect it to continue until 6/9/04."  (Defendant's Motion, Ex. 4, 1/27/2004 Approval Letter.)  This letter further emphasized that Plaintiff was to "specify FMLA if your call in is related to this leave," and that, "[i]f [your] condition persists past the date of approval, a new certification form will have to be filled out by your doctor prior to expiration."  (Id.)  No further requirements or demands were set forth in this letter.

Under these circumstances, the Court simply is at a loss to comprehend the infraction for which Plaintiff was cited in the two disciplinary notices Defendant presented to her on the date of her termination, February 2, 2004.  In the notice of a two-day suspension, Defendant acknowledged that Plaintiff had been "approved for

13

intermittent FMLA" leave, but stated that she nonetheless had "missed time where she need to apply for LOA [*i.e.,* leave of absence] (and be approved)." (Defendant's Motion, Ex. 5, Notice of Suspension.) Similarly, the notice of termination stated that Plaintiff had "not been approved for LOA for time missed." (Defendant's Motion, Ex. 6, Notice of Termination.) Yet, both of these notices rested principally on Plaintiff's several called-in absences *after* the commencement of her intermittent FMLA leave period on January 9, 2004.[6] Because Plaintiff *already* had been approved for FMLA leave at this point, the Court fails to understand why there should have been a need for her to secure Defendant's approval for some *additional* leave of absence encompassing this very same period.

Defendant's present motion sheds little or no light on this key issue. First, Defendant suggests that "[u]nder MotorCity Casino policy, associates who have been approved for intermittent FMLA leave and who call in for more than four consecutive days must report to Human Resources to complete Leave of Absence paperwork." (Defendant's Motion, Br. in Support at xi.) Notably, however, this assertion is utterly unsupported by any citation to the record. Moreover, the excerpts of the employee handbook that have been provided to the Court include no such requirement.[7] And, of

---

[6]The notice of suspension also cited four called-in absences prior to the commencement of the FMLA leave period, while the notice of termination cited three of these same prior call-ins dating back to October and December of 2003. Under Defendant's attendance policy, however, three or four call-ins within a 90-day period warrants only a verbal or written warning, respectively, and not a suspension or discharge.

[7]The only provision within this handbook that even remotely resembles the policy posited by Defendant states that "[b]efore returning to work from a serious health condition, which resulted in the loss of five consecutive working days, you will be required to submit a health care

14

course, Defendant's January 27, 2004 letter approving Plaintiff's request for intermittent FMLA leave mentioned no such requirement, but emphasized only that Plaintiff should "specify FMLA" when she called in absences that were encompassed within this leave. Plaintiff has testified that she satisfied this condition, (see Plaintiff's Dep. at 83), and there is no evidence to the contrary.

Nonetheless, Defendant insists that Plaintiff was notified of this purported need to obtain an additional leave-related certification from her doctor during a conversation with one of Defendant's human resources employees, Satanya Van Dam, on or around January 27, 2004. Any such notification is unavailing to Defendant, however, for a number of reasons. First, to the extent that this conversation could be construed as Defendant's request for recertification of a medical condition warranting an intermittent FMLA leave, any such request would have been premature. As a general matter, an employer may request recertification for pregnancy-based leaves "no more often than every 30 days," absent a "significant[]" change in circumstances or "information that casts doubt upon the

_____

provider's written certification that you are able to return to work." (Defendant's Motion, Ex. 2, Associate's Guide at 40.) Under the pertinent FMLA regulation, this is termed a "fitness-for-duty" certification. See 29 C.F.R. § 825.310.

There is no evidence that this fitness-for-duty provision played any role in Plaintiff's termination. To the contrary, the record indicates that Plaintiff was permitted to return to work on January 28, 2004 without providing a fitness-for-duty certification, despite having missed thirteen days of work between January 10 and January 27. In any event, the FMLA "fitness-for-duty" regulation permits an employer only to "delay restoration to employment," and not to discharge an employee, pending the employee's submission of the required certification. 29 C.F.R. § 825.310(f). More importantly, an employer is "not entitled to certification of fitness to return to duty when the employee takes intermittent leave," § 825.310(g), as is the case here. Perhaps this is why Defendant did not cite any lack of a required "fitness-for-duty" certification in the notice informing Plaintiff of her termination.

15

employee's stated reason for" a particular absence.  29 C.F.R. § 825.308(a); see also

Brumbalough v. Camelot Care Centers, Inc., 427 F.3d 996, 1002 (6th Cir. 2005)

(discussing this recertification regulation).  In this case, less than 30 days had passed

since Plaintiff provided her physician's certification in mid-January of 2004, and

Defendant has not cited any evidence in the record that would justify a demand for

recertification prior to the expiration of this 30-day period.

Perhaps, however, Defendant merely sought some sort of assurance from

Plaintiff's physician that her recent absences were pregnancy-related, and hence

encompassed within her previously approved intermittent FMLA leave.  So far as this

Court's own research has revealed, the FMLA and its implementing regulations do not

address this specific topic.  As noted, however, the regulations *do* address the related

topic of recertification, authorizing an employer to request this measure when, among

other circumstances, it "receives information that casts doubt upon the employee's stated

reason for [an] absence" or "upon the continuing validity of the [initial] certification."  29

C.F.R. § 825.308(a)(2), (c)(3).  This regulation surely suggests that an employer must

point to "information that casts doubt" upon an employee's claim of an FMLA leave-

related absence in order to demand recertification by the employee's physician within 30

days of the initial certification.  Yet, Defendant here has failed to identify any reason to

doubt Plaintiff's claim that each of her absences between January 10 and January 27 was

attributable to the pregnancy that warranted her intermittent FMLA leave.  To the

contrary, Defendant disavows any such belief, and instead asserts that its request for

16

additional medical documentation was based solely on an across-the-board (but apparently unwritten) policy that is triggered whenever an employee calls in absences on more than four consecutive days.

In any event, regardless of the circumstances under which the FMLA permits an employer to demand medical verification that a particular absence is properly counted as part of an approved FMLA leave, it seems evident that the employer must both notify the employee of this requirement and allow sufficient time and opportunity for the employee to comply.  Again, the regulation governing recertification is instructive on this issue, as it provides that an employer "must allow at least 15 calendar days" for an employee to obtain a requested recertification.  29 C.F.R. § 825.308(d); see also Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 554-55 (6th Cir. 2006); Brumbalough, 427 F.3d at 1002.  Similarly, Defendant's human resources representative, Satanya Van Dam, apparently referred to a 15-day time frame when she informed Plaintiff of the company "policy" regarding additional medical documentation, (see Plaintiff's Dep. at 35, 38), in evident recognition of the brute fact that it would take some time for Plaintiff to obtain the requested materials from her doctor.  More generally, the Sixth Circuit's decision in Cavin seems to indicate that the employer bears the burden of gathering any additional information that it deems necessary to confirm an employee's need for FMLA leave, once the employee has provided the certification and other supporting documentation called for under the statute and its implementing regulations.  See Cavin, 346 F.3d at 725-26 & n.9

As applied in Plaintiff's case, however, Defendant's "policy" lacked this necessary

17

degree of latitude.  According to Plaintiff's deposition testimony, she was first informed

on around January 27, 2004 that she needed to obtain some sort of additional certification

from her doctor.  Less than a week later, on February 2, 2004, she was informed that her

employment had been terminated, learning of her discharge as she visited her doctor's

office to secure the requested documentation.[8]  This discharge, according to Plaintiff, was

directly contrary to the assurances of Satanya Van Dam that she would be given until

Monday, February 2 to provide the necessary paperwork.  (See Plaintiff's Dep. at 35, 38.)

And, of course, this discharge seemingly ran afoul of the FMLA regulation that grants an

employee at least fifteen days to obtained a requested medical recertification.  See

Killian, 454 F.3d at 555 (finding that the employer in that case "clearly . . . violat[ed]" the

FMLA where it requested additional certification from the plaintiff employee "on

December 4, 2001, and . . . terminated [the plaintiff] six days later, on December 10,

2001").

       Under these circumstances, the Court finds that issues of fact remain as to whether

Defendant imposed requirements in excess of those set forth in the FMLA and its

implementing regulations, and then terminated Plaintiff's employment when she failed to

meet these additional requirements.  If so, this would constitute impermissible

---

       [8]Defendant makes much of the fact that Plaintiff did not subsequently produce any such
certification from her doctor, whether later that day when she reported to work or during the
course of the union grievance process.  Any such failure, however, lacks legal significance
unless there was a permissible basis for Defendant to request this medical documentation.  In any
event, accepting Plaintiff's deposition testimony as true (as the Court must at this juncture), she
reasonably could have concluded that it would be futile to produce any documentation from her
doctor, once she learned at her doctor's office that she already had been discharged.

interference with Plaintiff's exercise of her rights under the FMLA.  See Cavin, 346 F.3d at 720 ("[T]he FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA.").  Accordingly, Defendant is not entitled to summary judgment in its favor on Plaintiff's FMLA interference claim.

**C.     Defendant Is Entitled to Summary Judgment in Its Favor on Plaintiff's FMLA Retaliation Claim.**

Defendant next argues that it is entitled to summary judgment in its favor on Plaintiff's claim of retaliatory discharge in violation of the FMLA.  The Court agrees that Plaintiff's claim in this case is more appropriately analyzed as an interference rather than a retaliation claim, and that the evidence fails to support the latter theory of recovery.

As the Sixth Circuit has observed, a key distinction between an interference-based and a retaliation-based FMLA claim concerns the issue of the employer's motivation for its actions.  While "[t]he employer's intent is not a relevant part" of an FMLA interference claim, "the employer's motive *is* an integral part of the analysis" of a claim of retaliation.  Edgar v. JAC Products, Inc., 443 F.3d 501, 507-08 (6th Cir. 2006).  Hence, a plaintiff may recover under a retaliation theory only by showing "that the action was taken *because* the employee exercised, or complained about the denial of, FMLA-protected rights."  Edgar, 443 F.3d at 512.  Because of this element of employer motive,

the courts analyze retaliation claims under the usual <u>McDonnell Douglas</u> burden-shifting

framework.  <u>Edgar</u>, 443 F.3d at 512.

The Court assumes, for present purposes, that Plaintiff has established a *prima*

*facie* case of retaliatory discharge.  At this point, Defendant bears the burden of

articulating a legitimate, non-retaliatory reason for Plaintiff's discharge.  <u>See</u> <u>Skrjanc v.</u>

<u>Great Lakes Power Service Co.</u>, 272 F.3d 309, 315 (6th Cir. 2001).  As discussed,

Defendant cites Plaintiff's purported violation of the company's attendance policy as the

ground for her termination.  Defendant further asserts that this policy was triggered by

Plaintiff's failure to comply with a separate company "policy" that required her to

produce additional medical documentation in support of her absences in the latter half of

January, 2004.  As a result, these absences were not considered to be part of Plaintiff's

FMLA leave, but instead were governed by Defendant's usual attendance policy.

As indicated earlier, the net effect of these policies, at least as applied in this case,

was to impose obligations in excess of those mandated under the FMLA and its

implementing regulations, thereby constituting unlawful interference with the exercise of

FMLA rights.  Yet, it is one thing to conclude that an employer's policy violates the

substantive provisions of the FMLA, and another to say that the employer has applied this

policy for an impermissible retaliatory purpose.  As the courts have recognized in

analyzing motive-based claims of discrimination or retaliation, an "employer's reason for

discharge does not have to be a *good* reason," so long as this reason is "based on grounds

not proscribed by the statute."  <u>Hoffman v. Professional Med Team</u>, 394 F.3d 414, 422

20

(6th Cir. 2005); <u>see also</u> <u>Nizami v. Pfizer Inc.</u>, 107 F. Supp.2d 791, 805 & n.15 (E.D.

Mich. 2000).

Here, while Defendant might have unlawfully denied FMLA leave to Plaintiff

based on impermissibly stringent requirements, it cannot be said that Defendant then

discharged Plaintiff because of her exercise of FMLA-protected rights.  To the contrary,

Defendant states without contradiction that it discharged Plaintiff because it concluded,

however mistakenly or unlawfully, that her absences were ***not*** protected by the FMLA.

For all that appears in the record, the policies relied upon by Defendant in making this

determination are applied equally and across-the-board to all of the company's

employees, without regard for whether an employee has been approved for FMLA leave

or is absent from work for some other reason.

Plaintiff has not suggested otherwise in her response to Defendant's motion.  Nor,

more generally, was she able at her deposition to identify any specific facts in support of

her FMLA retaliation claim.  (<u>See</u> Plaintiff's Dep. at 61-62.)  It follows that she cannot

meet her burden, at the third stage of the <u>McDonnell Douglas</u> inquiry, to show that

Defendant's stated basis for discharging her was a mere pretext for unlawful retaliation.

<u>See</u> <u>Skrjanc</u>, 272 F.3d at 315.  While Defendant's stated reason for discharging Plaintiff

might not be a particularly good one, when viewed in light of the substantive terms of the

FMLA and its implementing regulations, there is no evidence of Defendant's intent to

retaliate against Plaintiff for her exercise of rights under the FMLA.  Consequently,

Defendant is entitled to summary judgment in its favor on Plaintiff's FMLA claim of

21

retaliatory discharge.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 29,

2005 Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, in

accordance with the rulings in this opinion and order.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 28, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager